IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2025

## KEYSHAWN D. FOUSE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-23-132      Jeff Parham, Special Judge**

_____

### No. W2024-01436-CCA-R3-PC

_____


Petitioner, Keyshawn D. Fouse, was convicted of attempted first degree murder, aggravated assault, and employing a firearm during the commission of a dangerous felony, for which he received an effective sentence of twenty-six years' confinement. This court affirmed Petitioner's convictions and sentences on direct appeal. Petitioner then filed a petition for post-conviction relief in which he claimed ineffective assistance of counsel, and the post-conviction court denied the petition after a hearing. On appeal, Petitioner asserts that trial counsel was ineffective in failing to properly advise him of the importance of his testimony at trial. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JOHN W. CAMPBELL, SR., JJ., joined.

Alexander D. Camp, Jackson, Tennessee, for the appellant, Keyshawn D. Fouse.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Jody Pickens, District Attorney General; and Shaun Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Procedural History

#### A. Trial

On August 26, 2019, Petitioner shot the victim, Mario Wilson, at a party in Jackson, Tennessee. *State v. Fouse*, No. W2021-00380-CCA-R3-CD, 2022 WL 6257349, at *1-2

(Tenn. Crim. App. Oct. 10, 2022), *no perm. app. filed*. The Madison County Grand Jury indicted Petitioner of attempted first degree murder, aggravated assault, and employing a firearm during the commission of a dangerous felony.[1] Petitioner proceeded to trial in November 2020 where the following evidence was presented.

On August 26, 2019, the victim, a member of the Omega Psi Phi fraternity at Lane College in Jackson was shot by the Petitioner, known as "Shoota." *Id.* at *1. Petitioner first approached the victim during the party and accused the victim of robbing him, which the victim denied. *Id.* Later that night, Petitioner confronted the victim again, and after a brief exchange, pulled out a handgun and shot the victim twice in the chest. *Id.* When Petitioner attempted to shoot the victim again, the gun jammed. *Id.* The victim managed to escape to the fraternity house and identified Petitioner as the shooter when he regained consciousness at the hospital. *Id.* Evidence, including shell casings, a blood trail, and text messages linked Petitioner to the scene. *Id.* at *1-2. Petitioner declined to present evidence. *Id.* at *2.

A Madison County jury found Petitioner guilty on all counts. *Id.*

On direct appeal, Petitioner argued that the evidence presented at trial was legally insufficient to sustain his conviction for attempted first degree murder, that trial court erred in allowing the use of Petitioner's nickname "Shoota," and that the trial court misapplied the law regarding Petitioner's sentencing. *Id.* at *3. Concluding Petitioner was not entitled to relief on any issue, this court affirmed the judgments of the trial court. *Id.* at *1.

Thereafter, Petitioner filed a timely petition for post-conviction relief, alleging ineffective assistance of counsel and asserting that trial counsel failed to properly advise Petitioner of the significance of testifying and failed to put on an insanity defense.[2] The post-conviction court appointed post-conviction counsel to represent Petitioner. On August 6, 2024, the post-conviction court conducted a hearing on Petitioner's claims.

## B. Post-Conviction Hearing

At the post-conviction hearing, Petitioner called his trial counsel ("Counsel") as his first witness. Counsel testified that he had been a licensed attorney in Tennessee for twenty-seven years at the time of the hearing and had worked as an assistant public defender for the past seven years. Counsel stated that Petitioner was in custody during the

---

[1] We take judicial notice of this court's records in *State v. Fouse*, No. W2021-00380-CCA-R3-CD. *See* Tenn. R. App. P. 13(c); *e.g., Harris v. State*, 301 S.W.3d 141, 147 n.4 (Tenn. 2010) (noting that an appellate court may take judicial notice of its own records).

[2] At the post-conviction hearing, Petitioner withdrew the allegation that trial counsel was ineffective in failing to argue an insanity defense.

- 2 -

entire time that Counsel represented him. Counsel explained that he met with Petitioner via video conference and in-person visits at the jail. After receiving the State's discovery materials, Counsel met with Petitioner and reviewed the evidence in the case with him. Counsel further reviewed the strengths and weaknesses of the State's offer with Petitioner. According to Counsel, the State offered an effective twenty-one year sentence in return for Petitioner's guilty plea. However, Petitioner rejected this plea offer and sought to move forward with trial.

Counsel recalled discussing with Petitioner about the significance of his testimony, especially in the absence of other witnesses that Petitioner could call in support of his anticipated defense. Counsel told Petitioner that "[w]e would wait and see what the proof showed at trial. But . . . generally if we're going to assert self-defense, the defendant usually is going to need to testify." However, after the State's proof, Counsel recalled being "kind of floored" when Petitioner stated that he did not want to testify. Counsel conveyed to Petitioner that the victim was a good witness for the State and the necessity to "counter" that testimony. Counsel remembered that Petitioner did not want to testify due "[s]omething to the effect [of] he didn't want to look silly" and that Petitioner "didn't want to testify in front of . . . the audience that was there." Counsel informed the trial court of Petitioner's decision not to testify, at which time a *Momon* hearing[3] was conducted.

At the *Momon* hearing, Counsel confirmed Petitioner's decision not to testify.[4] Petitioner acknowledged to the trial court his right to testify, that the State did not file a "notice of any prior crimes or anything that . . . [Petitioner] could be impeached with," and that Counsel "adequately explained to [Petitioner] the pros and cons of testifying versus not testifying." Counsel further gave Petitioner an opportunity to ask questions of Counsel or the court regarding his decision to not testify, which Petitioner declined. The court confirmed that Petitioner understood his constitutional guarantees of his right to testify and that he had spoken about the decision with Counsel. Petitioner acknowledged his rights and confirmed his decision to not testify.

Petitioner testified on his own behalf at the post-conviction hearing. Petitioner testified that Counsel conducted an initial consultation, received discovery from the State, explained the State's offer, and gave Petitioner the opportunity to ask questions about the case. Petitioner stated that he understood the State's offer and voluntarily rejected it. Petitioner confirmed that he elected to proceed to a jury trial.

---

[3] *See Momon v. State*, 18 S.W.3d 152 (Tenn. 1999).

[4] As noted above, we take judicial notice of the record in the underlying case provided to this court on direct appeal.

Petitioner testified, however, that Counsel failed to prepare him about what to expect for trial. Petitioner stated that he did not understand the risks and benefits of a trial and "felt like . . . [he] didn't really know what [he] was getting himself into." Petitioner testified that he shot the victim because the victim was "getting aggressive," and while Petitioner did not fear for his life, he thought the victim could injure him. Petitioner agreed that he did not provide Counsel with names of potential witnesses because "they just didn't want to come forward" and "get caught up in that court stuff." Recognizing the difficulty of establishing a defense without witnesses, Petitioner agreed his testimony at trial was important, but he did not understand its full significance at the time of trial. Ultimately, Petitioner contended that Counsel "should have done more to persuade [him] to [testify]."

On cross-examination, Petitioner stated that, had he testified at trial, he would have explained that he approached the victim upon arriving at the party, had a conversation with him, separated, and then about an hour later, encountered the victim again before shooting him. Petitioner stated that he did not know if the victim was armed but acknowledged that the victim did not draw a firearm or touch him. Petitioner agreed that he "just pulled a gun and . . . shot" the victim. Petitioner stated that Counsel told him that the prosecutor would "eat [him] up" or embarrass him had he took the witness stand. Petitioner agreed that Counsel's assessment was probably true.

## C. Post-Conviction Court's Findings

The post-conviction court found that Petitioner argued that Counsel was ineffective because Counsel "failed to properly advise and basically failed to make [Petitioner] testify." The post-conviction court found that Counsel and Petitioner essentially testified to "the same things" regarding their multiple meetings to discuss the case details, the plea offer, discovery materials, and Petitioner's decision to testify, which was addressed both before trial and prior to the *Momon* hearing. The post-conviction court further noted that it reviewed "the evidence in the case, including the trial transcript (especially the [*Momon*] hearing) and the testimony at [the post-conviction hearing]." The post-conviction court found that "the evidence fails to establish by clear and convincing evidence, that Petitioner received ineffective assistance of counsel" at trial. Accordingly, the post-conviction court denied Petitioner's claim for post-conviction relief.

Petitioner's timely appeal to this court follows.

## II. Analysis

### A. Post-Conviction Standard of Review

To obtain post-conviction relief, a petitioner must establish his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A petitioner bears the burden of proving the factual allegations contained in the petition by clear and convincing evidence. *Id.* § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 296 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger*, 279 S.W.3d at 292 (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, a post-conviction court's factual findings will not be disturbed unless the evidence contained in the record preponderates against the findings. *Brooks v. State*, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988); *Clenny v. State*, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). On the other hand, conclusions of law are given no presumption of correctness on appeal. *Dellinger*, 279 S.W.3d at 293; *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). We review "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013) (first *citing Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011); and then citing *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011)).

### B. Ineffective Assistance of Counsel

On appeal, Petitioner asserts that Counsel was ineffective because Counsel failed to properly advise him of the "full impact of the decision whether or not to testify at the trial." Petitioner argues that his failure to testify resulted in "certainty of conviction, whereas with his testimony, the outcome of the case could have been different."

Both the United States Constitution and the Constitution of the State of Tennessee guarantee criminal defendants the right to effective assistance of counsel. U.S. Const. amend VI; Tenn. Const. art. I, § 9. Under the Sixth Amendment to the United States Constitution, when a petitioner raises an ineffective assistance of counsel claim, the burden

is on the petitioner to show both (1) counsel's performance was deficient and (2) the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). To prevail on such a claim, a petitioner must prove both prongs of the *Strickland* test, and failure to prove either is "a sufficient basis to deny relief on the claim." *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "[A] court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

To prove that counsel's performance was deficient, a petitioner must establish that his attorney's conduct fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. As our supreme court has held:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

*Finch v. State*, 226 S.W.3d 307, 315-16 (Tenn. 2007) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 934-35 (Tenn. 1975)). A reviewing "court may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation." *Alley v. State*, 958 S.W.2d 138, 149 (Tenn. Crim. App. 1997) (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)). A reviewing court also cannot criticize a sound, but unsuccessful, tactical decision made during the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994).

To prove prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* As such, a petitioner must establish that his or her attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *Burns*, 6 S.W.3d at 463).

Petitioner asserts that Counsel was ineffective because Counsel failed to properly advise him of the "full impact of the decision whether or not to testify at the trial." In support of this argument, Petitioner asserts that the "only ability to facilitate a defense was through [Petitioner's] version of the events." And yet, Petitioner maintains that he chose not to testify because he lacked a full understanding of the risks and benefits and was advised by trial counsel that the prosecutor would "eat [him] up" if he did. The State contends that the post-conviction court correctly determined that Counsel was not deficient, and that Petitioner cannot establish prejudice. We agree with the State.

The record does not preponderate against the post-conviction court's finding that Counsel properly advised Petitioner—both before the trial and prior to the *Momon* hearing—of the significance of Petitioner's testimony. According to Counsel, Petitioner's testimony was crucial to assert self-defense and to challenge the victim's account, and Counsel had explained this to Petitioner. Hence, Counsel was "floored" when Petitioner declined to testify because he did not want to be embarrassed in front of the audience at the trial. As further confirmed at the *Momon* hearing, Petitioner agreed that Counsel "adequately explained to [Petitioner] the pros and cons of testifying versus not testifying." Ultimately, the decision not to testify rested with Petitioner, and he made his decision knowingly. Petitioner has not shown otherwise.

Finally, Petitioner has failed to establish the second *Strickland* prong, prejudice. 466 U.S. at 694. To prove prejudice, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In his post-conviction testimony, Petitioner stated that he did not fear for his life when he shot the victim, and that the victim neither drew a firearm nor touched him. Had this testimony been presented at trial, we conclude that there is not a reasonable probability that the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. Accordingly, the post-conviction court did not err in determining that Petitioner was not entitled to relief on the issue of ineffective assistance of counsel.

## III. CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE
